Good morning, your honors, and may it please the court. My name is Peter Pitanzo. On behalf of the appellant, Mikel Clotaire, who is incarcerated serving a 54-month sentence, and I was the trial attorney in the district court. As the courts are well aware, one of the most precious and fundamental principles of a criminal trial is the presumption of innocence. And what the trial court in this case failed to hold his obligation in preserving that fundamental principle when he erroneously admitted a booking photo, which this court and many courts across the country have said they strongly disfavor the admission of such embarrassing and humiliating and unnecessary photographs. In this case, it was extremely prejudicial in the fact that it was an identification case, and there was no other independent witnesses to make any identifications. This court has said that booking photos are a vivid symbol of criminal accusations conveying guilt to the viewer. They strongly disfavor the use of booking photos around the country. The Sixth Circuit has condemned the practice. They say that it eliminates and totally eviscerates the presumption of innocence and replaces with unmistaken criminality. I had a question. I saw this case cited in either your brief or the government's, but not for the booking photo issue. Are you familiar with the U.S. v. Hines case? I'm not. So in that case, which was from this court from 1992, we set out a three-part test for whether booking photos would be permitted. It sounds like you're not familiar with that test. We haven't applied it a lot since then, or perhaps at all, although other circuits have. So I'm wondering why we're not bound to apply that test. I can't speak to the three-part test, and respectfully, I'm not familiar with it. I can tell you the use in this particular case, in my opinion, raised to a prejudicial level that can't be deemed harmless. It was completely unnecessary. The government offered two other sets of photographs, a series of driver's license photographs, and a passport photo that was closer in time to the dates of the events. And the booking photo, as much as the district court went to say was just a photograph like any other photograph, the defendant's standing in front of a cellblock wall in what the government described as a jumper routinely seen by criminal defendants, couldn't be seen any other way. So getting back to what Judge Grant is talking about, in that Hines test, the three-part test, I don't know if you want to address the different prongs while you're there, are as follows. A demonstrable need to introduce the photographs. The photographs themselves, if shown to the jury, do not imply that the defendant has a prior criminal record, and the manner of introduction at trial did not draw particular attention to the source or implications of the photographs. So what we've said is it's reversible error unless, after we consider these three things, we conclude that these three factors in whole, or I guess on the whole. Well I think collectively there certainly was no need for the photograph. The government had other sources of photograph, independent sources that they could use. The booking photo clearly shows the source with him standing by the cellblock wall, clearly shows that he was arrested for the offenses. And as to the second prong. The second prong is that the photos themselves, if shown to the jury, do not imply that the defendant has a prior criminal record. I don't see how it could be seen any other way. He's standing in what could only be described as a cellblock wall in a prison, and clearly conveys nothing but other than guilt. So in this case it has to rise to the level of something that can't be seen as harmless, because there was no other evidence, no other supporting evidence in my opinion, because this was solely an identification case. One of the reasons I understood the district court gave was because this photo showed dreadlocks at the time of the arrest, whereas he was in court with a different hairstyle. Can you tell me whether or not the driver's license showed dreadlocks clearly? They did. There were a series of driver's license photos. Did the passport show dreadlocks? The passport photo did as well. And do we have copies of those documents in the records? Yes. Okay, they were admitted as exhibits? I believe the government admitted those as part of their appendix as well. The second issue that I think... And I'm sorry, one more thing. You said those two, the passport and the driver's license, were closer in time to the offense than the booking photo. I don't know, was the booking photo for this offense? It was, and it was several years... It was what it looked like on the day of this offense. The booking photo was several years after the conduct in the case. I believe the charges in the indictment were from 12 and 13, excuse me, 13 and 14. I believe the passport photo was closer to the end of 12, beginning of 13. And the driver's license photos, certainly the passport photo was closer in time. The driver's license photo may have been around the same time as the booking photo. What was he wearing in the booking photo? A jumper, the standard jumper that criminal defendants wear. Did it have a number across the front of it, like when you booked? No, they didn't. You have to have numbers somewhere on the photo. The government was able to take away all the marshal information and the booking information. But it unmistakably was a booking photo. The next issue I want to get to quickly was the identification or the lack of identification done by Lori Junior Dano, who was Yevnel Kloter's manager at the post office. There were two brothers indicted, Yevnel Kloter and Mikkel Kloter. Yevnel Kloter was a postal carrier who was previously indicted and convicted before we went to trial in this case. And the government called Ms. Junior Dano to testify that the person in the ATM photos was not Yevnel Kloter. Now, the Pierce case from this court, I think, is instructive on the issue. The court had said that they caution trial courts before they allow this type of opinion, evidence, this type of opinion testimony into evidence. But there are certain circumstances in which it will, if it can be shown that there is a sufficient predicate. There has to be a certain and critical to the analysis is the level of familiarity. In this case, Ms. Junior Dano was asked specifically if she was Yevnel Kloter's direct supervisor and she answered that she was the manager of the branch. Had she had substantial contacts with Yevnel Kloter, she certainly would have said it. She did not. The record is wholly insufficient to prove substantial and sustained conduct contacts with Yevnel Kloter in order to make such an identification. There was no predicate laid by the government as to a close relationship with substantial and sustained conduct contacts. Thank you, counsel. You have reserved eight minutes for rebuttal. Thank you. May it please the court. My name is Ann Schultz. I am the Assistant United States Attorney. I represent the Appellee of the United States of America in this matter. With me at council table is AUSA Adam McMichael who handled the matter in the district court. I would like to start by apologizing to the court for missing the Hines case. It was not discussed in the district court either, but Judge Middlebrooks, even though the case was not cited in his very thoughtful analysis of the request to put in the booking photo, did actually apply the prongs, although without necessarily understanding he was doing it. First of all, and I think from the court's questions and counsel's argument, the most people need question. It is true. We put in three photographs, or we put in the driver's license photos, which I believe are GX27, and then we put in the photographs from the passport, and then we put in the booking photo. I think one of the reasons that really cannot be overstated is that Mr. Patonzo very effectively, over and over and over, hammered the fact that the government had initially indicted McLeod Clotel's brother, Yavanel. As part of that, that had been based on the fact of looking at Yavanel's driver's license photo. As Judge Hall noted, at the time of the trial, as noted in the discussion with Judge Middlebrooks, regarding the admission of the book of photo, the defendant was cleaned up. In this case, unlike I think maybe your typical case, it was very important that this jury have every opportunity to see the defendant. Although his hair is in dreads in the passport photo, and it's in dreads in the driver's license photo, it's a slightly different look in the exhibits as well. I think the other thing that's very important about this is, dropping down for a moment to I believe it's the third prong, is the special care that Judge Middlebrooks took in this case in making sure to try to eliminate any possible showing that you had an obvious booking photo. I think one of the things that's very important is you have a look at Judge Middlebrooks, because he didn't just admit it. He asked to see Mikhail Cloutier's driver's license photos, and he looked at that. Then he looked at the photograph of the booking photo, and he specifically rejected the defense contention that it was obviously a booking photo. He noted that the attire that Cloutier wore in his driver's license photo, he likes v-necks, and he had a v-neck also in the attire from the prison. I think it's also significant, and the Seventh Circuit case, the Rue case that we cited in the brief, makes this point. It's one thing for all of us who know that a defendant is arrested, and we know that it's a booking photo, to look at it and say, yes, it's a booking photo. In this case, it's a blue shirt. It's Government Exhibit 69. I apologize. It's the first time I've ever inserted a photograph in a brief, and I forgot to tell my legal assistant to use a color copier. As I said, you have the originals as well. It's also in the original appendix of Mr. Cloutier. When you look at it, you've got a short-sleeved v-neck, blue hat, and top, and the background. I respectfully disagree, but more importantly, Judge Middlebrooks disagreed that it was an obvious booking photo. Let me ask you this, and I appreciate the pains that Judge Middlebrooks went to and that the government went to, but to me, it really does kind of look like an obvious booking photo. Assuming that we decided that it looks like an obvious booking photo, what is your best argument for why it doesn't matter to the ultimate outcome of the trial? In this case, I think as much as the government wanted and felt it was important and demonstrated the need, I think that the admission of it in this case would be harmless error in light of the fact of all the other evidence you have. Also, with the fact that the jury made the assessment, as I said, it was very effective as far as the hammering home for the jury to look at it. Again, I think that when you compare the photographs of taking away the booking photo, the David photo, and the surveillance photos, that in this case, if the court found an abuse of discretion, that it would be harmless error. Again, because of the fact that you have slightly different hairstyles. I want to also note, going back to the demonstrable need on the timing, this was a conspiracy that lasted over several months. It wasn't several years between the booking photo and the fact of the last date of the conspiracy. The booking photo is a few months more out of the time frame, but again, when you look at the fact of the critical need for the government to have all of its options available, and the fact that they were slightly different, it's not an abuse of discretion. Especially when you look at the factual finding of Judge Middlebrooks. I do think that while it's an abuse of discretion standard in putting in the booking photo, when you're looking at that factual finding, that it's not an obvious booking photo, and when you look at the attire, that that would be entitled to deference of a clear error standard of review. As to the second prong of Hines, there is nothing about this that indicates a prior arrest. With the booking photo, and again, the Seventh Circuit case makes the point that they know that the defendant is on trial. They know he's been arrested. This is a booking photo from this arrest. It's not a situation where you have in some cases where there's a timing element so the jury could put two and two together and realize that you have a prior arrest. Again, while I apologize that we did not cite the Hines case, in this case we meet the three factors. Judge Middlebrooks, although they're not citing the case, applied the three factors, and there's no abuse of discretion on this record. As for the Giordano argument, first of all, I think a very important point to make is that this is different from the Pierce case in that in Pierce you were talking about an identification of the defendant. The core concern in Pierce was the fact that you have the jury who can make the assessment, and so you should not have lay opinion testimony identifying the defendant as a person in a photograph unless it's the type of situation because the jury should be able to make that. Here you have a very different situation. What happened in this case, and again, I really don't think you can understate how effectively the defense hammered the government about the original misidentification and charging of Yovanel. You had Giordano, who worked as the manager of the post office, and he was in the office in Palm Beach Gardens for, I believe it was over a year. Mr. Patonso's correct that when the question was asked, were you his supervisor, she corrected the prosecutor and said, I was his manager. But with all due respect, that made no difference when you look at it in the big picture because what she said was, I was on the floor. She talked about interacting with Yovanel Cloutier. She was able to talk about the fact that the hairstyles were different. She identified him in the David photograph, his driver's license photograph. She looked around the courtroom and said, no, he's not here. Again, there was a lot of cross-examination, bringing out the fact that she had testified in the prior trial of Yovanel, that she knew that Yovanel was not on trial here. So all of the defense in the brief regarding her bias or that she had somehow been tainted by her knowledge were all explored and rejected by the jury. So there's absolutely sufficient evidence. And I would also note, as we noted in the brief, that although the government's position is that this was admissible and proper lay opinion testimony under Rule 701, regardless of whether you look at it as an abuse of discretion standard or you look at it as a plain error, as quoted in the brief, when this issue was raised and Judge Brittlebrook said, well, are you saying that she's not qualified to do it? The defendant raised a relevance objection. So the government's position is that this would actually be reviewed under the plain error standard. But again, regardless, whatever standard you apply, the test was met and there was no abuse of discretion in allowing Deirdre Donald to testify. Can I take you back for a moment to the mugshot issue? Of course. I'm sorry to ask you this because I know you don't have it in front of you, but just for your sort of gut reaction. There's a case called United States versus Rixner, which is a 1977 Fifth Circuit case, so we're bound by it, which suggests that when a mugshot is erroneously entered into evidence, that is subject to a harmless error analysis. But in the Hines case, we said that the introduction of mugshots is reversible error unless the government can show those three things, which to me suggests possibly that in Hines we refined what we meant by harmless error with the test. And so I guess what I'm asking you is, and I know you haven't really had a lot of time to think about it, but just your sort of initial reaction. Can you harmonize those two cases? Do you think that harmless error is something other than how it appears to have been described in Hines? Or do you think it's just sort of like, you think it's the Hines test? Does that tell us what the harmless error is? Or do you think that there's a straight up harmless error analysis like we would conduct in any other kind of case? I think there's a straight up harmless error analysis like you would in any other case, and that the Hines decision with that language does not overrule, or I would say even clarify. It sounds more to me that when they're talking about it, and again I apologize because I haven't read the case, or I don't recall reading the case. It's kind of unfair for me to ask you, but... No, it's absolutely fair. I should be prepared to answer it. Harmless error is such a standard across the board, foundational aspect of every appellate review, and it seems to me that when the court is talking about the three pronged test of whether or not you would admit it, that there it's talking about whether it's error and abuse of discretion. That I think is a different situation because you're talking about, okay, what is that demonstrable need? Is it there? Do you have a situation where it shows the prior record in a way that's prejudicial? Do you have the third prong also of a situation where it's obvious that it's a booking photo? Again, all things I don't think we have here. But on the harmless error, I think it's much broader than that because once you have that error established because the court inappropriately found the findings under the three pronged test, then there's so much more to look at in looking at harmless error. Then you're going to look at the strength of the case, not just whether there's demonstrable need and what the prejudice would be, but what that prejudice is in terms of all the evidence the government put in. So I think in that sense it would be harmless error. It's true, but I wonder if the first prong accounts in some way for the strength of the government's case. I think the first prong being, per that test, the introduction of mug shots is reversible error unless the government can show a demonstrable need to introduce the photographs. I don't think, Your Honor. That strikes me more like when you're talking about 404B and you're in the situation of, well, and I know it's a little different, but again, do you may incorrectly apply that and think that, yes, you've demonstrated that you need that evidence for extrinsic act under 404B, but that certainly wouldn't mean that just because there was a mistake and there really wasn't a demonstrable need that you wouldn't go through and do the analysis of whether or not there's harmless error. So again, the government's position is that in this case, the thoughtful handling by Judge established with Giordano's testimony about her long, for over a year, I believe, relationship as the manager at the post office with Yvonne L. Cloutier more than meets the test to give lay opinion testimony and again, no abuse of discretion in admitting it even if you apply that more deferential standard as opposed to plain error. Therefore the reason stated at oral argument and in the- I have a question about where is the driver's license in the passport photos in the evidence? Do you know the exhibit numbers of those two? Yes. I just checked to make sure I don't misstate it. I think the David photographs is 27 and I want to say 56 for the passport. I have those and the dates in a footnote. I just wanted to look at those and see because if you look at some people's passport and driver's license, they don't even look like the same person sometimes and just to see the variation because some of these surveillance photos are not clear. They have different heads and shots. I wanted to look at this booking photo has a lot of clarity to it and it's a straight on photo and I wanted to see what the passport photo looked like and the driver's license and you say they're in the record. They are in the record. I also have copies of them here. I can hand them to the court. Can you give them to the clerk of court and show them to counsel and make sure he agrees just so we can look at them in conference. I don't know that they'll shed any light on anything. I'm just curious. I did find the booking photo. You can do that afterwards if you want to unless you have it right there. It just would be helpful to look at those versus the... And just for the record, the driver's license photo is GX27. The passport I misspoke is not 56, it's 58 and the booking photo is 69. And with the court's permission, I'll approach the clerk. And I think that completes it and I appreciate the indulgence. And if there are no further questions, the government rests on its breath. Thank you. Just with respect to the... It's not really an identification in the traditional sense, but Ms. Giordano gave sort of a reverse identification. It was our position all along. The person in the photographs was Yovnel Cloutier and she was saying it wasn't. So essentially, the Pierce case I think is critical for the analysis as to whether or not that was error by the trial court. The KW Plastics case that I cited in the brief talks about... Gets specific as to what the substantial nature of the contacts should be and how the record should read before something like lay opinion testimony should be permitted. And it talks about the nature and extent of the contacts about the observation should be as detailed as possible. And when you look at the record of Ms. Giordano's testimony, she didn't talk about any of the contacts other than being a manager of the branch at the time. There was... And critical to the analysis is that the photograph she was looking at was taken four months prior to her ever working at the post office and ever meeting Yovnel Cloutier. So she's looking at a photograph that occurred well before she ever met him in clothing which she's not used to or accustomed to seeing him. And I think Pierce tells you that that is error. And I don't think it can be considered harmless considering this is, again, an identification case. Just briefly as to... I know Judge Hall, you mentioned the ATM surveillance photographs. And it's my position that they are not, that a videotape is not a record for purposes... Counsel, I appreciate, but the problem is that opposing counsel won't have an opportunity to respond. Understood. Then I'll rest on all of the arguments that I raised in the... Unless there are any other questions, I'll rest on the arguments raised in the briefs. Thank you very much, counsel. And I see that you were appointed. We appreciate very much your accepting the appointment. And we thank you for the good work that you both have done today.